IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GERMAN VIVAS,

     Plaintiff,

v.

UNITED STATES OF AMERICA,

     Defendant.

Civil Action File No.
1:20-CV-02217-WMR

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT UNITED STATES OF AMERICA'S
<u>MOTION FOR PARTIAL DISMISSAL</u>**

Defendant United States of America (the "United States") respectfully

shows the Court as follows in support of its Motion for Partial Dismissal.

# I.    INTRODUCTION

Plaintiff German Vivas ("Plaintiff") alleges in this lawsuit that federal law

enforcement agents with the United States Capitol Police ("USCP") and the

Federal Bureau of Investigation ("FBI") inadvertently executed a warrant at the

"wrong" home—the home of Plaintiff's brother where Plaintiff was staying—on

March 28, 2018.  Although the agents had arrived at the correct apartment

number ("Apartment 808"), they had not arrived at the correct apartment

building in a two-building complex.  Based on this conduct, Plaintiff purports to

assert claims against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, for assault and battery, false imprisonment, trespass, invasion of privacy, negligent infliction of emotional distress, and negligence.

While the FTCA waives the United States' sovereign immunity for certain claims, it preserves the United States' sovereign immunity for other claims based upon a federal agency's or employee's performance of "a discretionary function or duty . . . whether or not the discretion involved be abused."  *See* 28 U.S.C. § 2680(a).  Here, the "discretionary function exception" applies to Plaintiff's claims for trespass, invasion of privacy, negligent infliction of emotional distress, and negligence (Counts III-VI) because the decision as to how to locate and identify the subject of a warrant prior to service of the warrant from which those claims arise is (a) discretionary in nature and (b) susceptible to policy analysis.

Because the United States has not waived its sovereign immunity as to the foregoing claims (Counts III-VI), those claims should be dismissed for lack of subject matter jurisdiction.

## II.   FACTUAL BACKGROUND[1]

### A.   The Underlying Incident

On March 28, 2018, federal law enforcement agents with the USCP and the FBI attempted to execute a warrant at 298 Buckhead Avenue NE, Apartment 808, Atlanta, Georgia 30305.  Doc. 1 ¶¶ 10-11, 20.

As shown below, 298 Buckhead Avenue NE is located in the southern building of a two-building complex that is bordered by Buckhead Avenue NE to the South and East Paces Ferry Road NE to the North:



---

[1] The United States accepts the facts alleged in Plaintiff's Complaint (Doc. 1) as true for purposes of this motion.

Google Maps.[2]  The northern building contains 297 East Paces Ferry Road NE, Atlanta, Georgia.  *Id.*  Both "298 Buckhead Avenue" and "297 East Paces Ferry Road" contain an "Apartment 808."  Doc. 1 ¶¶ 10, 20.

Unbeknownst to the agents, when they arrived to execute the warrant at what they believed was Apartment 808 of 298 Buckhead Avenue, they in fact were at Apartment 808 of 297 East Paces Ferry Road.[3]  Doc. 1 ¶¶ 10, 20-23.  Upon arriving, the agents knocked on the door of the apartment and announced, "[P]olice, FBI, open the door or we will knock it down."  *Id.* ¶¶ 11-12.  At the time, the agents were wearing "green military-style uniforms."  *Id.* ¶ 13.

Inside the apartment were Plaintiff and his brother, Michael Vivas, who was the owner of the apartment.  Doc. 1 ¶ 10.[4]  Upon hearing the agents knock

---

[2] https://www.google.com/maps/dir/298+Buckhead+Ave+NE,+Atlanta,+GA+30305/297+East+Paces+Ferry+Rd+NE,+Atlanta,+GA+30305 (last accessed on October 28, 2020).  The Court may take judicial notice of this map and consider it without converting this motion into a motion for summary judgment.  *See Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1320 n.14 (N.D. Ga. 2017) (recognizing that "Courts often rely on Google Maps") (citing, *inter alia*, *United States v. Proch*, 637 F.3d 1262, 1266 n.1 (11th Cir. 2011)); Fed. R. Evid. 201(d); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

[3] Upon information and belief, the agents had entered the apartment complex through the loading dock and inadvertently accessed the elevator bank for 297 East Paces Ferry Road rather than the elevator bank for 298 Buckhead Avenue.

[4] Plaintiff is a permanent resident of Florida who was staying at his brother's apartment at the time of the incident.  Doc. 1 ¶¶ 8, 10.

and announce themselves, Plaintiff opened the apartment door.  *Id.* ¶ 13.  The

agents then rushed into the apartment with their firearms raised and pushed

Plaintiff to the side, with one agent telling him to keep his hands up and remain

still, and another agent pushing Plaintiff's brother against a wall.  *Id.* ¶¶ 14-16.

Plaintiff contends the agents then "started ransacking the apartment, needlessly

knocking items off the table."  *Id.* ¶ 17.

　　According to Plaintiff, none of the agents asked him or his brother for their

names.  Doc. 1 ¶ 19.  When Plaintiff's brother asked the agents why they were

there, an agent showed Plaintiff's brother a warrant that listed the 298 Buckhead

Avenue, Apartment 808 address.  *Id.* ¶ 20.  When Plaintiff's brother advised the

agent that they were not at the correct address, the agent demanded proof, and

Plaintiff's brother showed the agent a utility bill (presumably showing the 297

East Paces Ferry Road, Apartment 808 address).  *Id.* ¶¶ 21-22.  The agent then

asked Plaintiff's brother where 298 Buckhead Avenue, Apartment 808 was

located, and Plaintiff's brother told him the agents were on the wrong street.  *Id.*

¶ 23.  With the exception of one agent, who "remained behind a few minutes and

provided [Plaintiff] with his business card," the agents immediately left the

apartment to serve the warrant at the correct address.  *Id.* ¶¶ 24-25.

Plaintiff contends that, as a result of the incident, he was diagnosed with post-traumatic stress disorder, depression, and anxiety, underwent counseling, and has been prescribed medications.  Doc. 1 ¶¶ 30-31.

### B.   Administrative History and Plaintiff's Complaint

Plaintiff filed a written complaint with the USCP on April 11, 2018.  Doc. 1 ¶ 29.  Plaintiff also contends that he provided the USCP and FBI with notice of tort claims on June 20, 2019.  *Id.* ¶ 4.  Plaintiff contends that the FBI and USCP denied his administrative tort claims on December 18, 2019 and December 20, 2019, respectively.  *Id.* ¶¶ 4-5.

Plaintiff filed the instant lawsuit on May 25, 2020.  Doc. 1, at 1.  The lawsuit purports to assert six causes of action against the United States pursuant to the FTCA:  (a) Count I, for false arrest/false imprisonment (Doc. 1 ¶¶ 34-38); (b) Count II, for assault and battery (*id.* ¶¶ 39-43); (c) Count III, for trespass (*id.* ¶¶ 44-48); (d) Count IV, for invasion of privacy (*id.* ¶¶ 49-53); (e) Count V, for negligent infliction of emotional distress (*id.* ¶¶ 54-58); and (f) Count VI, for negligence (*id.* ¶¶ 59-65).

Plaintiff's Complaint alleges that, at all relevant times, the individual officers and agents were acting under color of law and within the course and scope of their employment with the United States.  Doc. 1 ¶ 32.  He also alleges

that all of the officers and agents were law enforcement officers empowered by law to execute searches, seize evidence, and make arrests.  *Id.* ¶ 33.

Plaintiff further alleges that "[t]he individual officers and agents had a duty to act with reasonable care and to abide by the U.S. Constitution and follow its own practices procedures in executing the no-knock warrant."[5]  Doc. 1 ¶ 60. He contends that "[t]he individual officers and agents breached this duty of care by attempting to serve the warrant at the wrong home."  *Id.* ¶ 61.  And he alleges that "[t]he arrest warrant listed the correct address for service, but the individual officers failed to take any steps verify [sic] the correct physical address of the location where they served the arrest warrant."  *Id.* ¶ 62.

## III.    ARGUMENT AND CITATIONS TO AUTHORITY

### A.    Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a claim for lack of subject matter jurisdiction.  If the Court lacks subject matter jurisdiction, the Court must dismiss the claim.  Fed. R. Civ. P. 12(h)(3).

---

[5] It is not clear whether Plaintiff's reference to a "no-knock" warrant was inadvertent.  *See* Doc. 1 ¶ 60.  Plaintiff does not reference a "no-knock" warrant elsewhere in his Complaint, and he admits that the agents knocked and announced their presence before attempting to execute the warrant.  *See generally id.*; *id.* ¶¶ 11-12.

The plaintiff bears the burden of showing that subject matter jurisdiction exists. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

### B.   Sovereign Immunity and the FTCA

A plaintiff "cannot sue the United States unless the United States unequivocally has waived its sovereign immunity." *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1157 (11th Cir. 2020) (citing *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015)). "If sovereign immunity applies, a court lacks subject matter jurisdiction to consider a claim." *Id.* at 1157 n.3 (citing *Zelaya*, 781 F.3d at 1322).

The FTCA waives the United States' sovereign immunity for injuries or loss of property "caused by the negligent or wrongful act or omission" of federal employees acting within the scope of their duties. *Foster Logging, Inc.*, 973 F.3d at 1157 (citing 28 U.S.C. § 1346(b)). However, the FTCA also contains certain exceptions. 28 U.S.C. § 2680. These exceptions "must be strictly construed in favor of the United States." *Foster Logging, Inc.*, 973 F.3d at 1157 & n.4 (citing 28 U.S.C. § 2680(a), and quoting *Zelaya*, 781 F.3d at 1322). If an exception applies, the United States retains its sovereign immunity, and the claim must be dismissed for lack of subject matter jurisdiction. *Cohen v. United States*, 151 F.3d 1338, 1340 (11th Cir. 1998).

### C.     The FTCA's Discretionary Function Exception

One exception to the FTCA's waiver of the United States' sovereign immunity is the "discretionary function" exception set forth in 28 U.S.C. § 2680(a). *Foster Logging, Inc.*, 973 F.3d at 1157. The discretionary function exception provides that the United States preserves its sovereign immunity for any claim "based upon the exercise or performance or the failure to perform <u>a discretionary function or duty</u> on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* (quoting 28 U.S.C. § 2680(a)) (emphasis in original).

The discretionary function exception represents Congress' belief "that imposing liability on the government for its employees' discretionary acts 'would seriously handicap efficient governmental operations.'" *Cohen*, 151 F.3d at 1340-41 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)). Its purpose "is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Foster Logging, Inc.*, 973 F.3d at 1157 (quoting *United States v. Gaubert*, 499 U.S. 315, 323 (1991)).

To survive dismissal, a plaintiff must allege facts showing that his claim falls outside the discretionary function exception. *Foster Logging, Inc.*, 973 F.3d at 1159 (citing *Douglas v. United States*, 814 F.3d 1268, 1276 (11th Cir. 2016), and *Gaubert*, 499 U.S. at 324-25). For purposes of this motion, the United States does not dispute that Plaintiff's claims for assault and battery and false imprisonment (Counts I and II) fall outside the discretionary function exception because they are among the six intentional torts listed in the "law enforcement proviso" of 28 U.S.C. § 2680(h). *See Millbrook v. U.S.*, 569 U.S. 50, 52-53 (2013); *Nguyen v. United States*, 556 F.3d 1244, 1257 (11th Cir. 2009) (holding that the law enforcement proviso trumps the discretionary function exception). As a result, the only claims at issue in this motion are Plaintiff's claims for trespass, invasion of privacy, negligent infliction of emotional distress, and negligence (Counts III-VI).

> **D.    The Discretionary Function Exception Bars Plaintiff's Claims for Trespass, Invasion of Privacy, Negligent Infliction of Emotional Distress, and Negligence (Counts III-VI).**

"The Supreme Court has developed a two-part test that courts must apply in determining whether challenged conduct falls within the discretionary-function exception to the FTCA's waiver of sovereign immunity." *Foster Logging, Inc.*, 973 F.3d at 1157 (citing *Gaubert*, 499 U.S. at 322); *see Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). "First, a court examines the nature of the

challenged conduct or act to determine whether it is 'discretionary in nature,' meaning that it involves 'an element of judgment or choice." *Foster Logging, Inc.*, 973 F.3d at 1157 (quoting *Gaubert*, 499 U.S. at 322).  "Second, if the challenged conduct involves an element of judgment or choice, a court then determines 'whether the judgment is of the kind that the discretionary function exception was designed to shield.'" *Id.* (quoting *Gaubert*, 499 U.S. at 322-23).

Here, the challenged conduct from which Plaintiff's claims for trespass, invasion of privacy, negligent infliction of emotional distress, and negligence arise is the agents' alleged failure properly to identify and locate the apartment that was subject to the warrant prior to their execution of the warrant.  Doc. 1 ¶¶ 44-65.  As discussed below, Plaintiff has not met—and cannot meet—his burden of showing that this conduct falls outside the discretionary function exception.

### 1.   The Challenged Conduct Was Discretionary in Nature.

In determining whether the challenged conduct was discretionary in nature, the inquiry focuses on "whether [a] controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." *Foster Logging, Inc.*, 973 F.3d at 1158 (quoting *Hughes v. United States*, 110 F.3d 765, 768 (11th Cir. 1997)).  "[I]f a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' there is no

judgment or choice involved," and the discretionary function exception does not apply. *Id.* at 1157 (quoting *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 485 U.S. at 536)). "Conversely, unless a 'federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard,' it will be presumed that the particular act involved an element of judgment or choice," and the discretionary function exception will apply. *Zelaya*, 781 F.3d at 1330 (citing *Autery v. United States*, 992 F.2d 1523, 1529 (11th Cir. 1993)).

Here, despite his burden to do so, Plaintiff has not identified any federal statute, regulation, or policy specifically prescribing a course of action that the agents were required to follow in locating and identifying the apartment that was subject to the warrant. *See* Doc. 1; *Foster Logging, Inc.*, 973 F.3d at 1158; *Zelaya*, 781 F.3d at 1330-31; *Mesa v. United States*, 123 F.3d 1435, 1438 n.4 (11th Cir. 1997). Accordingly, "there was at least some element of judgment or choice at play" with respect to the challenged conduct, which satisfies the first prong of the discretionary function exception test. *See Foster Logging, Inc.*, 973 F.3d at 1158; *Mesa*, 123 F.3d at 1438. The first prong of the discretionary function exception test therefore is met with respect to Plaintiff's claims for trespass, invasion of privacy, negligent infliction of emotional distress, and negligence (Counts III-VI).

- 12 -

**2.     The Judgment or Choice Involved Was of the Kind that the Discretionary Function Exception Was Designed to Shield.**

In determining whether the judgment or choice involved was of the kind that the discretionary function exception was designed to shield, "the issue is whether 'the nature of the actions taken' by [the government employees] were 'susceptible to policy analysis.'" *Foster Logging, Inc.*, 973 F.3d at 1158 (quoting *Gaubert*, 499 U.S. at 325).   "The inquiry here is not fact-based." *Id.* at 1159 (citing *Autery v. United States*, 992 F.2d at 1530-31).  "This inquiry is not concerned with 'the subjective intent of the government employee' or whether he or she 'actually weighed social, economic, and political policy considerations before acting.'" *Id.* at 1158 (quoting *Ochran v. U.S.*, 117 F.3d 495, 500 (11th Cir. 1997)).  Instead, it requires courts "to look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one that we would expect inherently to be grounded in considerations of policy." *Id.* at 1159 (quoting *Autery*, 992 F.3d at 1530-31).

Relevant here is the Eleventh Circuit's decision in *Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997).  In *Mesa*, the plaintiffs asserted FTCA claims after Drug Enforcement Agency ("DEA") agents inadvertently executed an arrest warrant on the wrong person—a person with the same name as the person

identified in the warrant.  *Id.* at 1437.  In support of their claims, the plaintiffs

alleged that the DEA agents failed to ascertain the identity of the persons inside

the plaintiffs' residence prior to their service of the warrant, served the warrant

"on the wrong man and/or at the wrong address," and failed to cease and desist

the detention and questioning of the plaintiffs once their mistake was discovered.

*Id.* (internal citations omitted).

In analyzing the applicability of the discretionary function exception, the

Eleventh Circuit identified two types of challenged conduct at issue:  (a) "[t]he

decision as to how to locate and identify the subject of an arrest warrant prior to

service of the warrant"; and (b) "th[e] process of determining whether the person

apprehended is actually the person named in the arrest warrant."  *Mesa*, 123 F.3d

at 1438-39.  After "readily" concluding that both types of conduct are

discretionary in nature under the first prong of the discretionary function

exception test, the court examined both types of conduct under the second prong

of the discretionary function exception test.  *Id.*

First, the *Mesa* court concluded that "[t]he decision as to how to locate and

identify the subject of an arrest warrant prior to service of a warrant is

susceptible to policy analysis."  123 F.3d at 1438.  The court explained:

> For example, in deciding how extensively to investigate the location and identity of the subject, agents may weigh the urgency of apprehending the subject in light of such factors as the potential threat the subject poses to public safety and the likelihood that the subject may destroy evidence.  A desire to keep the investigation secret—for tactical reasons, to protect confidential sources, to protect the agents involved, or for other reasons—may also factor into the decision as to how to locate and identify the subject of a warrant.  In addition, agents may consider their available resources and decide how to allocate those resources among the many investigations for which they are responsible.

*Id.* at 1438.  Second, the *Mesa* court concluded that "[t]he process of determining whether the person apprehended is actually the person named in the arrest warrant is grounded in considerations of public policy."  123 F.3d at 1438.  The court explained:

> For example, in making such a determination, the agents may consider the possible repercussions of erroneously deciding that the person they apprehended is not in fact the person named in the warrant and letting that person go free.  Such an erroneous decision could potentially create a serious danger to public safety, and could also pose a threat to the agents involved in executing the warrant if the freed subjected decided to retaliate against the agents.  Additionally, the agents involved in executing the warrant may consider the fact that if they mistakenly free the person detained, the person may destroy evidence or may flee and thus evade or make more difficult future capture and prosecution.

*Id.* at 1438-39.  The *Mesa* court thus held that the discretionary function exception applied to the plaintiffs' claims and affirmed the dismissal of the plaintiffs' complaint for lack of subject matter jurisdiction.  *Id.*

Following *Mesa*, the Eleventh Circuit similarly applied the discretionary function exception to the United States Customs Service and Coast Guard's boarding and search of a fishing vessel based on a report of narcotics trafficking, which discovered no contraband and resulted in damage to the vessel that caused it to sink. *Mid-South Holding Co., Inc. v. U.S.*, 225 F.3d 1201, 1205-06 (11th Cir. 2000). Specifically, during the search, agents allegedly disconnected an electrical cord that powered the vessel's bilge pump, causing the vessel to flood and sink. *Id.* at 1203. In affirming dismissal of the plaintiff's claims, the Eleventh Circuit held that the decision to board and search the vessel was susceptible to policy analysis because, among other things, the agents had to decide "how best to effectuate our nation's anti-narcotics laws" and "weigh[] the costs of implementing such activities against the likelihood of an enforcement success." *Id.* at 1206. But the court also held "that the on-site decisions of the agents of the Customs Service concerning the manner in which to search the vessel also fall within the scope of the discretionary function exception." *Id.* at 1206 (citing *Varig Airlines*, 467 U.S. at 819-20). As the court explained, "the agents must balance the overarching goal of locating contraband with such concerns as efficiency and the minimization of intrusion on the privacy and property interests of searched parties." *Id.* at 1207.

A more recent, albeit non-binding, instructive decision is *Figueroa v. U.S.*, No. 13-1290 (CVR), 2014 WL 6879316 (D. Puerto Rico).  Like Plaintiff here, the *Figueroa* plaintiffs purported to assert FTCA claims against the United States after FBI agents "attempted to serve [a] warrant on the wrong house."  *See id.* at *1. There, the agents deployed tear gas into the plaintiffs' home, entered the home with weapons drawn, handcuffed one of the plaintiffs, and destroyed the plaintiffs' furniture and personal belongings before realizing they were in the wrong house.  *Id.*

After "easily" determining that the agents' conduct was discretionary in nature, the *Figueroa* court looked primarily to the Eleventh Circuit's *Mesa* decision in determining that the agents' conduct was "precisely the kind that other courts have found to be protected by the discretionary function exception." 2014 WL 6879316, at *8-*9 (discussing *Mesa*, 123 F.3d at 1438, and listing additional cases).  In particular, the *Figueroa* court adopted the *Mesa* court's finding "that deciding how extensively to investigate the location and identity of the subject, the urgency of apprehending the subject, the potential threat the subject posed to public safety, the likelihood that the subject could destroy evidence, the desire to keep the investigation secret, and the proper allocation of available resources were all fundamentally rooted in policy considerations."  *Id.*

- 17 -

at *8 (citing *Mesa*, 123 F.3d at 1438).  The court thus applied the discretionary function exception and held that it lacked subject matter jurisdiction over the plaintiffs' complaint.  *Id.* at *9.

Here, Plaintiff has not alleged any facts that warrant a result different than the holdings in *Mesa*, *Mid-South*, and *Figueroa*.  To the contrary, the USCP and FBI agents' alleged execution of the subject warrant at the "wrong" home here is functionally equivalent to the alleged warrant executions and/or searches in those cases.  *See Mesa*, 123 F.3d at 1438-39; *Mid-South Holding, Inc.*, 225 F.3d at 1206-07; *Figueroa*, 2014 WL 6879316, at *8-*9.  Because the agents' conduct is discretionary in nature and susceptible to policy analysis for the very same reasons identified in those cases (*see id.*), both the first and second prongs of the discretionary function exception test are satisfied here.

Accordingly, the discretionary function exception applies to Plaintiff's claims for trespass, invasion of privacy, negligent infliction of emotional distress, and negligence (Count III-VI), and this Court lacks subject matter jurisdiction over those claims.  Those claims therefore should be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court dismiss Plaintiff's claims in this case for trespass, invasion of privacy, negligent infliction of emotional distress and negligence (Counts III-VI).

Respectfully submitted, this 28th day of October, 2020.

BYUNG J. PAK
*United States Attorney*

s/ Aaron J. Ross
AARON J. ROSS
*Assistant United States Attorney*
Georgia Bar No. 461981
75 Ted Turner Drive SW
Atlanta, Georgia 30303
Telephone:  404-581-6228
Facsimile:  404-581-6181

*Counsel for Defendant*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the documents to which this certificate is attached

have been prepared in Book Antiqua font, 13-point type, which is one of the font

and point selections approved by the Court in N.D. Ga. L.R. 5.1(C).

s/ Aaron J. Ross
Aaron J. Ross
*Assistant United States Attorney*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the

Clerk of Court using the CM/ECF system, which will automatically send e-mail

notifications of such filing to the following opposing counsel of record:

Jeffrey R. Filipovits
Spears & Filipovits, LLC
1126 Ponce de Leon Ave.
Atlanta, Georgia 30306

Lisa C. Lambert
Law Office of Lisa C. Lambert
245 N. Highland Ave., Suite 230-139
Atlanta, Georgia 30307

This 28th day of October, 2020.

s/ Aaron J. Ross
Aaron J. Ross
*Assistant United States Attorney*

*Counsel for Defendant*